Filed 6/7/22 P. v. Gonzales CA2/4

Opinion following transfer from Supreme Court

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B301485 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No.PA042487) |
| v. | |
| ROBERT GONZALES, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, David W. Stuart, Judge. Reversed and remanded with instructions.

Edward J. Haggerty, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee, Charles J. Sarosy, Daniel C. Chang and John Yang Deputy Attorneys General, for Plaintiff and Respondent.

After being instructed on aiding and abetting principles and the felony murder theory, a jury convicted appellant Robert Gonzales of first degree murder and found true a robbery-murder special circumstance. We affirmed on direct appeal. (*People v. Gonzales* (Feb. 27, 2007, B188161) [nonpub. opn.] (*Gonzales I*).)

Appellant later filed a petition to vacate his conviction and for resentencing under Penal Code section 1170.95.[1] The trial court appointed counsel for appellant but denied his petition at the prima facie stage. Relying on the facts recited in *Gonzales I*, the trial court found appellant ineligible for relief as a matter of law because he directly aided and abetted the murder, was a major participant in the crime, and acted with reckless indifference. Appellant challenged the order on appeal. We affirmed, concluding appellant could still be convicted of murder because *Gonzales I* found substantial evidence supported the murder conviction on an aiding and abetting theory. (*People v. Gonzales* (Dec. 29, 2020, B301485) [nonpub. opn.] (*Gonzales II*).)

The Supreme Court granted review and subsequently transferred the matter back to us with directions to vacate *Gonzales II* and reconsider the cause in light of Senate Bill No. 775 (Stats. 2021, ch. 551) (S.B. 775) and *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*).

We vacate *Gonzales II*. After reconsidering the cause with the aid of supplemental briefing from the parties, we conclude the order denying appellant's petition must be reversed. After S.B. 775, a finding that there is substantial evidence to support a conviction for murder is insufficient to prove, beyond a reasonable doubt, that a section 1170.95 petitioner is ineligible

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

for relief even at the evidentiary hearing stage. (See § 1170.95, subd. (d)(3).) Our findings in *Gonzales I* that substantial evidence supported the murder conviction and robbery-murder special circumstance finding accordingly are not preclusive of relief as a matter of law. Nor is the special circumstance finding itself, which the jury made prior to Supreme Court cases clarifying the meaning of the special circumstance statute, *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). (E.g., *People v. Torres* (2020) 46 Cal.App.5th 1168, 1173 (*Torres*), review granted June 24, 2020, S262011, overruled in part by *Lewis, supra*, 11 Cal.5th at p. 963.) Moreover, *Lewis* clarified that a trial court may not engage in factfinding involving the weighing of evidence or the exercise of discretion at the prima facie review stage. The trial court thus erred by finding that appellant was an aider and abettor and major participant who acted with reckless indifference to human life. For all these reasons, we reverse the order denying appellant's petition and remand the matter to the trial court with directions to issue an order to show cause and proceed in accordance with section 1170.95.

## FACTUAL BACKGROUND[2]

On September 29, 2002, appellant attended a party in the backyard of a house in Pacoima. Joe Gonzalez (Gonzalez), Victor

---

[2] Our factual narrative is drawn from the factual recitation in *Gonzales I*. We note that appellant relies on the same recitation in his opening brief, although he states that he does so "without conceding that it is necessarily complete" or "agree[ing] that the following facts are the only facts that might have been relevant to whether he is entitled to relief under section 1170.95."

3

Zapata, and brothers Jamul Thomas and Teevaughn Thomas were also in attendance.[3]

Around midnight, Zapata and Jamul went to the side yard, where two groups of men were arguing. Appellant was there, and Zapata saw him pull out a shotgun and cock it. Zapata and Jamul ran from the party, but returned to find Teevaughn.

Zapata and Jamul waited for Teevaughn in the street in front of the house. While they were waiting, an SUV pulled up. Zapata and Jamul talked with the occupants of the SUV. Zapata then heard arguing behind him. He turned and saw Jamul arguing with Gonzalez; the men were cursing at each other. Zapata saw appellant standing 10 to 12 feet behind Gonzalez at an angle, with his shotgun out. After he saw appellant, Zapata pulled Jamul toward the middle of the street.

As Zapata pulled Jamul away, Gonzalez drew a handgun and pointed it at Jamul's head. Jamul batted the gun away several times and told Gonzalez to put the gun down and fight like a man. Gonzalez asked Jamul if he was afraid to die and demanded the chain Jamul wore around his neck. Jamul removed the chain and held it out. Gonzalez grabbed the chain. He then shot Jamul in the chest.

Zapata reached toward Jamul, and Gonzalez pointed the gun at him and demanded his chain as well. As Zapata was taking off his chain, Gonzalez shot at him and missed. Appellant remained in the same general area throughout the entirety of the incident, angled behind Gonzalez, with his shotgun out. When Zapata realized he had not been hit, he ran down the sidewalk. Gonzalez fired at him several more times. A group of

---

[3]     We refer to the Thomas brothers by their first names to avoid confusion. No disrespect is intended.

4

men standing behind appellant yelled "Astoria, Astoria" as Zapata ran away.[4] Zapata also heard bullets flying past his head as he ran. Teevaughn, who was running behind him, shouted that he too had been hit. Both Zapata and Teevaughn made it to the car. Jamul died of a single gunshot wound.

Police recovered three .22 caliber casings and one shotgun shell from the area of the shooting. The shotgun shell had been fired from a shotgun later recovered from appellant's apartment.

## PROCEDURAL HISTORY

### I. Trial

Appellant and Gonzalez were jointly charged with murder in the commission of a robbery (§§ 187, subd. (a), 190.2, subd. (a)(17)) and attempted premeditated murder (§§ 664, 187, subd. (a)). The information also included firearm (§ 12022.53, subds. (b)-(e)) and gang (§ 186.22, subd. (b)(1)) allegations, and a felon in possession charge against appellant (former § 12021, subd. (a)(1)).

Appellant and Gonzalez were tried jointly. The jury found Gonzalez guilty of second degree murder and attempted murder, but rejected the gang and firearm allegations. The jury found appellant guilty of the felon in possession charge. It was unable to reach a verdict on the murder and attempted murder charges and related allegations.

The prosecution subsequently filed an amended information against appellant, adding an additional count of robbery (§ 211) to the counts and allegations mistried during the first trial. A second jury found appellant guilty of first degree

---

[4]      A gang expert testified that Astoria Gardens Locos was a gang, and that appellant had tattoos demonstrating allegiance with the Astoria Gardens Locos.

5

murder with a robbery special circumstance, attempted murder, and robbery. It also found true the firearm and gang enhancements. The trial court sentenced appellant to life without the possibility of parole for the special circumstances murder, plus 25 years to life for the firearm enhancement on that count. Appellant also received a life term for the attempted murder. The court imposed concurrent sentences for the robbery and felon in possession convictions, and stayed the gang enhancement.

## II. Direct Appeal

On direct appeal, appellant successfully challenged his conviction for attempted murder. We affirmed both his murder conviction and the special circumstance finding, however. We rejected his argument that collateral estoppel should bar the murder conviction, concluding he was "a direct participant in the crime." We also rejected his contentions that the murder conviction and special circumstance finding were not supported by substantial evidence. We observed that the prosecution case "rested on aiding and abetting and felony-murder theories," but not on the natural and probable consequences doctrine. We ultimately held there was sufficient evidence to support his conviction as an "as an aider and abettor of murder and robbery," and that the jury could conclude he "was a major participant in the incident and that he acted with reckless indifference to human life." The Supreme Court denied appellant's petition for review. (*People v. Gonzales*, S151594).

## III. Section 1170.95 Petition

On March 11, 2019, appellant filed a form section 1170.95 petition to vacate his murder conviction and for resentencing. He checked boxes indicating that he was convicted pursuant to the

6

felony-murder theory or the natural and probable consequences doctrine and could no longer be so convicted due to changes in the law. He also checked boxes indicating that he did not act with the intent to kill or otherwise assist the killer in committing the murder, and that he was not a major participant in the crime or did not act with reckless indifference to human life. Appellant requested appointment of counsel.

On May 10, 2019, the prosecution filed a substantive opposition.[5] It argued the petition should be denied because appellant was a major participant who acted with reckless indifference to human life, even under the updated standards of *Banks*, *supra*, 61 Cal.4th 788 and *Clark*, *supra*, 63 Cal.4th 522. The prosecution also pointed to *Gonzales I*'s holding that sufficient evidence supported appellant's conviction on an aiding and abetting theory, and attached a copy of *Gonzales I*.

The court appointed counsel for appellant. Appellant's counsel filed a reply in which he argued that the record before the trial court contained insufficient evidence to support a finding that appellant was a major participant who acted with reckless indifference to human life under *Banks* and *Clark*. The prosecution subsequently filed an additional response arguing that *Gonzales I* found appellant was an aider and abettor and a major participant who acted with reckless indifference to human life.

The court held a hearing on September 26, 2019. Appellant's counsel argued that the court could not rely on the

---

[5] It also filed a separate opposition arguing that section 1170.95 and its enabling legislation were unconstitutional. Only the substantive opposition is relevant here; the trial court did not reach the constitutional issue.

jury's findings that appellant was a major participant who acted with reckless indifference to human life, or *Gonzales I*'s discussion thereof, because they pre-dated *Banks* and *Clark*. The prosecution responded that the jury also found, and *Gonzales I* affirmed, that appellant was a direct aider and abettor, such that "there's no theory upon which the court would [*sic*] grant defense motion." Appellant's counsel declined the court's invitation to respond to that argument.

The court concluded appellant was not eligible for resentencing under section 1170.95. It stated, "Evidence is clearly overwhelming that he was a direct aider and abetter [*sic*] and that he was a major participant with reckless indifference. He stood guard with a shotgun, and while the robbery and murder took place right in front of him, backing up the actual shooter. It's just - - it's not really even a close call. So this is not appropriate for resentencing under SB 1437."

Appellant timely appealed. We affirmed the trial court's ruling, concluding appellant was ineligible for relief as a matter of law because *Gonzales I* held there was substantial evidence to convict him under an aiding and abetting theory.

Appellant filed a petition for review, which the Supreme Court granted and held pending resolution of *Lewis*. (See *People v. Gonzales*, No. S266887.) The Supreme Court issued a decision in *Lewis*, *supra*, 11 Cal.5th 952 in July 2021. Shortly thereafter, the Legislature enacted and the governor signed into law Senate Bill No. 775 (Stats. 2021, ch. 551), which amended and clarified several subdivisions of section 1170.95. Senate Bill No. 775 took effect January 1, 2022.

On February 23, 2022, the Supreme Court transferred the matter to this court with directions to vacate *Gonzales II* and

reconsider the cause in light of *Lewis, supra,* 11 Cal.5th 952, and Senate Bill No. 775. Appellant and respondent filed supplemental briefing addressing those and other new authorities.

## DISCUSSION

### I. Legal Framework

Senate Bill No. 1437 eliminated murder liability under theories of imputed malice other than the felony murder rule, which it significantly narrowed by amending sections 188 and 189. (§§ 188, subd. (a)(3), 189, subd. (e); Stats. 2018, ch. 1015, §§ 2, 3.) Senate Bill No. 1437 also added section 1170.95 to the Penal Code. (Stats. 2018, ch. 1015, § 4.) As amended by Senate Bill No. 775, section 1170.95 permits a person who was convicted of murder, attempted murder, or manslaughter under any theory of imputed malice, including the felony-murder theory, but who could no longer be convicted due to Senate Bill No. 1437's changes to the law, to petition the sentencing court to have the conviction vacated and to be resentenced on any remaining counts. (§ 1170.95, subd. (a); Stats. 2021, ch. 551, § 2.)

A section 1170.95 petition must contain the petitioner's declaration that he or she is eligible for resentencing, the superior court case number and year of the relevant conviction, and an indication whether the petitioner requests the appointment of counsel. (§ 1170.95, subd. (b)(1).) After ascertaining that the petition contains the required information, the trial court must appoint counsel for the petitioner if he or she requested it. (§ 1170.95, subd. (b)(3).) The trial court then must allow the parties to file briefs and hold a hearing to determine whether the petitioner has made a prima facie showing of

9

entitlement to relief.  (§ 1170.95, subd. (c); *Lewis*, *supra*, 11 Cal.5th at pp. 960-968.)

"[A]t the prima facie stage, a petitioner's allegations should be accepted as true, and the court should not make credibility determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis*, *supra*, at p. 974, quoting *People v. Drayton* (2020) 47 Cal.App.5th 965, 980 (*Drayton*).)  The prohibition against factfinding at the prima facie stage is subject to a limited exception: "'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner.'"" (*Lewis*, *supra*, 11 Cal.5th at 971, quoting *Drayton*, *supra*, 47 Cal.App.5th at p. 979.)  "However, this authority to make [factual] determinations without conducting an evidentiary hearing . . . is limited to readily ascertainable facts from the record (such as the crime of conviction). . . ." (*Drayton*, *supra*, 47 Cal.App.5th at p. 980.)  The record, for this purpose, generally includes appellate opinions such as *Gonzales I*. (*Lewis*, *supra*, 11 Cal.5th at p. 972.)  The probative value of an appellate opinion is case-specific.  (*Ibid.*)

"'[T]he prima facie bar was intentionally . . . set very low.'" (*Lewis*, *supra*, 11 Cal.5th at p. 972.)  If a petitioner clears it, the trial court must issue an order to show cause.  (§ 1170.95, subd. (c).)  The court then holds a hearing to determine whether to vacate the petitioner's conviction and resentence him or her on any remaining counts.  (*Id.*, subd. (d)(1).)  At the hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the

10

changes to Section 188 or 189 made effective January 1, 2019." (*Id.*, subd. (d)(3).) The court may consider currently admissible evidence that was admitted at a prior hearing or trial involving the petitioner, and both sides may also offer new or additional evidence. (*Ibid.*) "A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (*Ibid.*) "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Ibid.*) The court must vacate the petitioner's conviction if a factfinder previously found the petitioner was not a major participant in the crime or did not act with reckless indifference to human life. (*Id.*, subd. (d)(2).)

## II.     Analysis

We conclude the trial court erred in denying appellant's section 1170.95 petition without issuing an order to show cause. *Gonzales I* indicated that appellant's jury was instructed on the felony-murder theory, and his petition alleged he was not the actual killer, did not act with the intent to kill as an aider and abettor, was not a major participant in the underlying robbery, and did not act with reckless indifference to human life. If these allegations are true, appellant could no longer be convicted of murder under section 189, subdivision (e), and is entitled to resentencing. (See § 1170.95, subd. (a)(3); Stats. 2018, ch. 1015, § 3.) The court was required to accept appellant's allegations as true, and to issue an order to show cause, unless readily ascertainable facts from the record of conviction refuted his allegations as a matter of law. (See *Drayton*, *supra*, 47

11

Cal.App.5th at 980; *Lewis, supra,* 11 Cal.5th at 974.) Nothing in the record of conviction did so.

Our conclusion in *Gonzales I* that sufficient evidence supported appellant's conviction does not establish that appellant is ineligible for resentencing as a matter of law. (§ 1170.95, subd. (d)(3).) Nor does our conclusion that he was "a direct participant" in the murder. The extent of appellant's involvement in the crime is a factual question that cannot properly be resolved at the prima facie stage of review. Moreover, appellant alleged in his petition—and argues here — that he did not act with the intent to kill; that assertion is not squarely foreclosed by anything in the record and therefore should have been credited. This is not to say we accept appellant's contention that the trial court could not rely on the appellate opinion; we conclude only that nothing in that opinion precluded relief.

We also disagree with the trial court's conclusion (and respondent's contention) that appellant's allegations were refuted as a matter of law by the felony-murder special circumstance finding that pre-dated both *Banks* and *Clark*. *Banks* established an analytical framework for determining whether a defendant is a "major participant" in an underlying felony for purposes of establishing the felony-murder special circumstance, while *Clark* focused on what it means to act with "'reckless indifference to human life'" in connection with the same issue. (See *Banks, supra,* 61 Cal.4th at pp. 803-804; *Clark, supra,* 63 Cal.4th at pp. 614-623.) Whether those cases "merely clarified the law as it always was" (*People v. Simmons* (2021) 65 Cal.App.5th 739, 747, review granted Sept. 1, 2021, S270048), or substantively changed it such that previous special circumstances findings may no

12

longer be valid has divided the Courts of Appeal and is pending review in the Supreme Court.[6]

Cognizant of the conflicts in the law, we continue to follow the *Torres* line of cases. (See *Torres*, *supra*, 46 Cal.App.5th 1168.) Under those cases, a special circumstance finding that pre-dates *Banks* and *Clark* does not preclude a petitioner's eligibility for relief under section 1170.95 as a matter of law, because "'the factual issues that the jury was asked to resolve [before *Banks* and *Clark* were decided] are not the same factual issues our Supreme Court has since identified as controlling.'" (*People v. Mejorado* (2022) 73 Cal.App.5th 562, 571, review granted March 23, 2022, S273159, quoting *People v. Smith* (2020) 49 Cal.App.5th 85, 93, review granted July 22, 2020, S262835; see also *Torres*, *supra*, 46 Cal.App.5th at p. 1179.)

Respondent contends that even under *Torres*, any error by the trial court is harmless "if this Court holds that a petitioner is ineligible for relief under a purely legal *Banks/Clark* analysis." In so arguing, respondent suggests we may, in the first instance, engage in a de novo review to determine whether appellant committed the underlying felonies as a major participant who acted with reckless indifference under the standards set forth in *Banks* and *Clark*. We disagree. *Lewis* clarified that a trial court's authority at the prima facie stage of review is "limited," in that it may not "engage in 'factfinding involving the weighing of

---

[6] The Supreme Court granted review in *People v. Strong* (Dec. 18, 2020, C091162) [nonpub. opn.], review granted March 10, 2021, S266606, to resolve the issue whether a felony-murder special circumstance finding made before *Banks* and *Clark* precludes a petitioner from making a prima facie showing of eligibility for relief under section 1170.95. (*People v. Strong*, S266606.)

13

evidence.'" (*Lewis*, supra, 11 Cal.5th at p. 972, quoting *Drayton*, supra, 47 Cal.App.5th at p. 980.) Moreover, section 1170.95, subdivision (d)(3) specifically contemplates the introduction of "new or additional evidence," and nothing in the statute indicates that evidence may not concern whether appellant was a major participant in the underlying felonies, or acted with reckless indifference to human life. We accordingly decline to conduct our own assessment of the current limited record to determine in the first instance whether appellant was a major participant who acted with reckless indifference to human life. (See *People v. Smith*, supra, 49 Cal.App.5th at pp. 95-96.)

Regardless of whether the trial record contains substantial evidence of aiding and abetting or special circumstances under *Banks* and *Clark*, appellant satisfied his prima facie burden. He is therefore entitled to an evidentiary hearing, at which the parties may offer new or additional evidence, and at which the trial court will determine whether the prosecution proved beyond a reasonable doubt that appellant was a major participant in the robbery and acted with reckless indifference to human life, or was otherwise guilty of murder under current law.

## DISPOSITION

The order denying appellant's petition for resentencing under section 1170.95 is reversed. The matter is remanded to the trial court with directions to issue an order to show cause and proceed in accordance with section 1170.95.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


WILLHITE, ACTING P.J.


CURREY, J.